UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON K. HAWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-0529-CVE-TLW |
| ) | |
| COOK PUMP COMPANY et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Cook Pump Company's Motion for Summary Judgment and Brief in Support (Dkt. # 43). Defendant Cook Pump Company (Cook) argues that plaintiff Brandon K. Hawn has no evidence that it sold a defective product or that the product caused his injury, and it seeks summary judgment in its favor on plaintiff's claims of manufacturer's products liability and negligence. Plaintiff responds (Dkt. # 52) that he would not have been injured if defendant's product had not allegedly malfunctioned and his employer, HS Field Services, Inc. (HS), had not been called to repair the product, and he argues that this gives rise to a genuine dispute as to the cause of his injuries.

**I.**

Hawn was hired by HS in September 2009, and he was assigned to work with Bo Benfer and Dean Perkins. Dkt. # 43-3, at 3. On April 7, 2010, HS received a call to repair a well operated by Constellation Energy Partners LLC (CEP), and the well was known as the Massey Well No. 6-13. Id. at 8. CEP asked HS to repair a pump jack that had been installed on April 6, 2010, and CEP reported that the pump jack had "seized up" and stopped working shortly after it had been installed.

Id. at 9-10. HS directed Hawn, Benfer, and Perkins to respond to CEP's call, and the repair operation was supervised by a CEP employee named Richard Boone. Id. at 41.

Boone told the HS workers to replace some bearings, but it was necessary to remove a pin to gain access to the bearings. Id. at 28-29. A necessary part of this procedure was to use a chain to tie the "cable head" or "horse head" to the wellhead, because the pump jack could begin to move during the repair if this safety procedure was not followed. In particular, there was a risk that the pump jack would begin to move and create a pinch point that could injure a worker servicing the pump jack. Id. at 15. A warning label is attached to the pump advising any person performing maintenance on the pump: "TO AVOID BODILY INJURY STAY CLEAR OF ROTATING PARTS AND PINCH POINTS" and to "NEVER SERVICE, OR MAINTAIN THIS PUMP WITHOUT FIRST SHUTTING DOWN THE POWER SUPPLY." Dkt. # 43-2, at 7. Benfer threw a chain over the horse head but he failed to tie the chain to the wellhead. Dkt. # 43-3, at 16. Hawn was seated on the horizontal base of the pump jack and he was told to hold the pin in place while Perkins swung a sledgehammer to knock out the pin. Id. at 19-20, 22. After the pin was removed, the workers could access the bearings that Boone directed them to replace. Perkins used the sledgehammer to remove the pin and the Pitman arm of the pump jack began to move. Id. at 25. Hawn testified that this was the anticipated result if the "horse head" were not chained to the wellhead. Id. at 26-27. When the pump jack began to move, the wrist pin assembly also moved and created a pinch point, and the wrist pin assembly went into Hawn's leg. Id. at 30. There is no dispute that Hawn would not have been injured if proper safety procedures had been followed. Id. at 34. Paramedics were called to treat Hawn's injuries, and the paramedics directed the workers to leave the pump jack in place until a helicopter could arrive to take Hawn to a hospital. Id. at 30.

2

On August 19, 2013, Hawn filed this case alleging claims of manufacturer's products liability and negligence against Cook and CEP, and he seeks compensatory and punitive damages in excess of $10,000. Dkt. # 2. Hawn could be alleging a manufacturer's products liability claim under a theory that the product was inherently defective and that Cook failed to warn users of a potential hazard. See Dkt. # 33, at 1 (joint status report).[1] CEP filed a third party complaint (Dkt. # 10) alleging that HS entered a master service contract with CEP, and CEP claims that HS agreed to indemnify CEP against claims made by HS' employees. CEP also demanded that HS defend CEP against plaintiff's claims. Hawn has voluntarily dismissed his claims against CEP, and CEP's third party claims against HS for defense and indemnification are also dismissed due to the dismissal of plaintiff's claims against CEP. Holcomb v. Allis-Chalmers Corp., 774 F.2d 398, 400 (10th Cir. 1985) (finding that third party claims for indemnification or contribution "necessarily fell by the wayside" when the plaintiff's claims against the party asserting third party claims were dismissed). The only claims remaining are plaintiff's claims of manufacturer's products liability and negligence against Cook.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of

---

[1]  CompSource Oklahoma claims that it paid workers' compensation benefits to Hawn, and it was permitted to intervene in this matter because it claimed a right to subrogation if Hawn recovered damages from a third party. Dkt. ## 16, 19, 20. However, if Hawn is unsuccessful, CompSource Oklahoma will likewise have no right to recover anything from Cook.

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Cook argues that plaintiff has no evidence that Cook manufactured a defective product or that a defective product caused his injury. Dkt. # 43, at 10-11. Cook argues that the malfunctioning pump simply created a condition under which it was possible for plaintiff to be injured, and it was plaintiff's disregard of an obvious and warned hazard that caused his injury. Dkt. # 54, at 2.

4

Plaintiff responds that the pump malfunctioned within 24 hours of installation, and he would not have been injured if the pump had worked properly and HS had not been called to repair the pump.[2] Dkt. # 52, at 2-3.

**A.**

Plaintiff has alleged a manufacturer's products liability claim against Cook. In <u>Kirkland v. General Motors Corp.</u>, 521 P.2d 1353 (1974), the Oklahoma Supreme Court determined that Oklahoma would recognize a claim for manufacturer's products liability. A claim of manufacturer's products liability has three elements:

> 1) the product was the cause of the injury;
>
> 2) the defect existed in the product at the time the product left the manufacturer's possession and control;
>
> 3) the defect made the product unreasonably dangerous to the plaintiff or the plaintiff's property.

<u>Clark v. Mazda Motor Corp.</u>, 68 P.3d 207, 208 (Okla. 2003). To qualify as "unreasonably dangerous," a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." <u>Swift v. Serv. Chem., Inc.</u>, 310 P.3d 1227, 1331 (Okla. Civ. App. 2013). When the defect alleged by a plaintiff would not be obvious to an ordinary person, a plaintiff will often be required to present expert testimony to establish the existence of a product defect. <u>See</u>

---

[2] The Court notes that plaintiff's three page response was filed more than 21 days after defendant's motion for summary judgment was filed, and it could be stricken as untimely. However, the Court declines to strike the response and will consider the single argument advanced by plaintiff in opposition to defendant's motion for summary judgment. This does not excuse plaintiff's failure to respond to defendant's statement of undisputed material facts and, pursuant to LCvR 56.1(c), defendant's material facts are deemed admitted.

Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193 (10th Cir. 2002); Tate v. Statco Engineering & Fabricators, Inc., 2013 WL 6185476 *9 (E.D. Okla. Nov. 25, 2013); Nash v. General Motors Corp., 153 P.3d 73 (Okla. Civ. App. 2006).

A plaintiff may also attempt to show that a product is defective due to the manufacturer's failure to warn consumers "of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist." McKee v. Moore, 648 P.2d 21, 23 (Okla.1982). A manufacturer may be liable due to a complete failure to warn or for providing an inadequate warning, but a manufacturer is "not required to foresee that consumers will fail to read the product's warning and then use the product in a manner that the instructions warn against." Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020, 1027 (Okla. Civ. App. 2004). A failure to warn claim is also not permitted when the user knows of the potential danger from using the product and uses the product in a potentially dangerous manner. Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284 (Okla. 1992) ("there is no duty to warn a knowledgeable user of the product of the dangers associated therewith").

Plaintiff claims that the product had a mechanical defect or that it did not perform as it was intended, because the pump "seized up" and his employer was called to service the pump after it stopped working. However, he has not identified any inherent defect in the product that allegedly made it unreasonably dangerous for the ordinary consumer. He simply alleges that the product did not work and that it needed to be repaired. This does not meet plaintiff's burden in a manufacturer's products liability case to show that defendant manufactured or distributed a product with an inherent defect at the time it left Cook's possession. Plaintiff has offered no expert testimony that the pump had a specific defect or any other circumstantial evidence that the product was defective. Plaintiff's complaint also suggests that he intends to assert a manufacturer's products liability claim under a

6

failure to warn theory. If this were the case, he could have attempted to show that the pump was defective to the lack of a warning or the insufficiency of the warning. He has not pursued this theory in his response to defendant's motion for summary judgment, but the evidence shows that plaintiff could not prevail under this theory. Defendants have presented evidence that the pump had a warning label and that plaintiff was actually aware of the danger of placing himself in a pinch point when servicing the pump. Dkt. # 43-2, at 7; Dkt. # 43-3, at 13-14. Plaintiff testified in his deposition that he received safety training about avoiding pinch points and he admits that he put himself in a place where he knew he could be injured. Id. at 14. Even if there had been no warning, plaintiff was a knowledgeable user who knew of the risk of injury and the manufacturer had no duty to warn plaintiff of known dangers. Duane, 833 P.2d at 286. Plaintiff has not shown that the pump manufactured by Cook contained an inherent defect or that Cook could be liable under a failure to warn theory, and the Court finds no evidence that Cook manufactured a defective product.

Even if plaintiff could establish that the product was defective, Cook argues that plaintiff cannot show that a product defect was the proximate cause of his injury. The mere happening of an accident does not prove that a product defect caused a plaintiff's injury and the mere possibility that a product defect caused an accident is insufficient to hold a defendant liable under a theory of manufacturer's products liability. Kirkland, 521 P.2d at 1363. "If some act of the plaintiff caused the injury, rather than the defective product itself, causation is missing, and the plaintiff may not recover . . . ." Id. at 1366. Plaintiff argues that the pump seized up after being in use for one day and if the pump had worked properly he would not have been injured. Dkt. # 52, at 2. He claims that the pump jack "initiated the sequent [sic] of events that led to [his] injury" and that the mechanical breakdown in the pump was the "but for" cause of his injury. However, plaintiff cannot

establish causation merely by alleging that he was injured by Cook's product. K.M. ex rel Arnold v. Steger Lumber of Durant, 296 P.3d 517, 520 (Okla. Civ. App. 2012). The Tenth Circuit has explained that the proper causation inquiry in a manufacturer's products liability case under Oklahoma law is whether an alleged product defect caused the plaintiff's injury, and it is irrelevant whether a defendant's actions merely created a condition under which an accident could occur. Minter v. Prime Equipment Co., 356 Fed. App'x 154, 159-60 (10th Cir. Dec. 14, 2009).[3] There is no dispute that the pump needed to be repaired, but plaintiff must show that some defect in the product actually caused his injury. In this case, Cook attached a warning to the product that advised users "TO AVOID BODILY INJURY STAY CLEAR OF ROTATING PARTS AND PINCH POINTS," and plaintiff had received training from his employer about avoiding pinch points. Dkt. # 43-2, at 7; Dkt. # 43-3, at 13-14. The evidence is clear that a mechanical breakdown in the pump created the condition giving rising to possibility of injury, but plaintiff has not presented evidence that a defective product actually caused his injury. Instead, the cause of plaintiff's injury was his own disregard of his safety training and posted warnings by placing himself in a position where he could be injured. This was compounded by the failure of his co-workers to follow the required safety procedure of chaining the pump jack to the wellhead. Plaintiff has not shown that the pump manufactured by Cook was defective or that a product defect caused his injury, and Cook is entitled to summary judgment on plaintiff's manufacturer's products liability claim.

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

**B.**

Plaintiff has also alleged a negligence claim against Cook based on the same facts giving rise to his manufacturer's products liability claim. Under Oklahoma law, plaintiff must prove three elements to prevail on an ordinary negligence claim: (1) defendant owed a duty to plaintiff to protect plaintiff from injury; (2) defendant violated that duty; and (3) plaintiff suffered injuries that were proximately caused by defendant's violation of a duty. Consolidated Grain & Barge Co. v. Structural Systems, Inc., 212 P.3d 1168, 1171 n.8 (Okla. 2009). For the purpose of its motion for summary judgment, Cook does not dispute that it owed a duty to plaintiff or that it may have violated that duty but, instead, Cook focuses on the causation element of plaintiff's negligence claim. The mere fact that plaintiff was injured by a pump manufactured by Cook is not sufficient to establish that the pump was the proximate cause of his injury. See Gilham v. Lake Country Raceway, 24 P.3d 858, 860 (Okla. 2001). Plaintiff must show that Cook's actions were the proximate cause of his injury, which is defined as the "natural and continuous sequence, unbroken by an independent cause, [that] produces the event and without which the event would not have occurred." Johnson v. Mid-South Sports, Inc., 806 P.2d 1107, 1109 (Okla. 1991). A defendant's liability may be cut off if the defendant can show that a supervening cause was the proximate caused the plaintiff's injuries. The Oklahoma Supreme Court has stated that:

> For an intervenor's act to become a "supervening cause" and cut off possible liability for the original negligence, it must (1) be independent of the primary negligence, (2) be adequate of *itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event. When such an act qualifies as a *supervening cause*, the original negligence mutates into a mere condition and as a matter of law is no longer actionable. When, however, the intervening act is a *reasonably foreseeable consequence* of the primary negligence, the original wrongdoer will not be relieved of liability. Also, where the primary act of negligence is not superseded by a second cause--i.e, continues to operate concurrently, so that damage is the result of both

9

> causes acting in concert--each act may be regarded as the proximate cause and the
> wrongdoers will be jointly and severally liable for the plaintiff's compensable harm.

Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997) (emphasis in original).

Plaintiff argues that he would not have been required to repair the pump but for Cook's negligence in manufacturing a pump with a mechanical defect, and he claims that the malfunctioning pump caused his injuries.[4] Dkt. # 52, at 2. However, plaintiff wholly overlooks all of the events that occurred after plaintiff and his co-workers arrived to repair the pump. Cook assumes for the sake of its summary judgment motion that it was negligent in manufacturing a pump that needed to be repaired one day after being put into use, but it argues that plaintiff's conduct was a supervening cause that cut off any liability that Cook might have for plaintiff's injuries. In this case, plaintiff admits that he received safety training about avoiding pinch points and it is undisputed that the pump had a warning label advising users to stay clear of pinch points. Plaintiff also admits that his co-workers should have chained down the pump jack to the wellhead before initiating the repair. The evidence shows that there are at least two supervening causes that were independently sufficient to cause plaintiff's injuries and that defendant's liability, if any, was cut off as a result of these supervening causes. First, plaintiff's own negligence in placing himself in a pinch point was independent of any act of Cook and it was adequate to have caused plaintiff's injuries, and plaintiff has presented no evidence that Cook should have foreseen that a knowledgeable user would disregard posted warnings and would voluntarily place himself in a pinch point. Second, the negligence of plaintiff's co-workers in failing to chain the pump jack to the wellhead was also

---

[4] Assuming that a manufacturer owes a duty to manufacture a properly functioning product, it would seem that this duty is owed to the purchaser of the product rather than a person subsequently called to repair the product. However, Cook has not raised this issue and plaintiff's negligence claim can be disposed of on other grounds.

independently sufficient to cause plaintiff's injuries, and plaintiff has not shown that Cook should have foreseen that trained repairmen would fail to comply with standard safety procedures. Even if Cook's actions created a condition under which plaintiff could be injured, it was the conduct of plaintiff and his co-workers that independently caused plaintiff's injuries and Cook cannot be held liable for any negligence it may have committed. See <u>Akin v. Missouri Pacific R. Co.</u>, 977 P.2d 1040, 1055 (Okla. 1998) ("if the negligence complained of merely affords an opportunity that makes the injury possible and a subsequent act causes that injury, the opportunity is not the proximate cause of the injury"). Summary judgment should be entered in favor of Cook on plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that Defendant Cook Pump Company's Motion for Summary Judgment and Brief in Support (Dkt. # 43) is **granted**. A separate judgment is entered herewith.

**DATED** this 1st day of October, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE